IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY A. MONTGOMERY, | ) | |
| | ) | No. 14 C 10453 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the U.S. Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kimberly Montgomery ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("SSA") denying her Social Security disability benefits under Title II ("DIB") of the Social Security Act ("the Act"). Plaintiff has filed a motion for summary judgment [15] and the Commissioner has filed a cross-motion for summary judgment [23]. After reviewing the record, the court grants Plaintiff's motion for summary judgment and denies the Commissioner's cross-motion for summary judgment.

## BACKGROUND

### I. Procedural History

Plaintiff filed a DIB application on July 5, 2012 alleging a disability onset date of November 2, 2005 due to a spinal lumbar injury, a back injury, arthritis, and nerve damage in back and legs.[1] Her initial application was denied on September 13, 2012 and again at the reconsideration stage on December 17, 2012.[2] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on February 11, 2013 and the hearing was scheduled on June

---

[1] (R191, 194)
[2] (R115, 125)

13, 2013.³ On November 1, 2013, the ALJ issued a written decision denying Plaintiff's application for DIB benefits.⁴ The Appeals Council ("AC") denied review on October 30, 2014, thereby rendering the ALJ's decision as the final decision of the agency.⁵

## II.     Medical Evidence

Plaintiff alleges that she has been having back pains since the late 1990s or early 2000s.⁶ Medical records indicate that Plaintiff has been a patient of Dr. James E. Wilson for her back pain since April 11, 2005.⁷ On November 7, 2005, Plaintiff visited Adventist Hinsdale Hospital for a percutaneous disc compression procedure, a minimally invasive procedure to relieve her of her back pain.⁸ On January 16, 2006, Plaintiff underwent the same procedure with Dr. Wilson and was discharged with instructions to take pain medication.⁹ On May 2, 2006, an MRI was taken of Plaintiff's lumbar spine that resulted in normal findings.¹⁰

On April 10, 2006, Plaintiff visited Dr. John Brayton for a neurological consultation; After reviewing an MRI of her lumbar spine, Dr. Brayton found signs of degenerative changes and stenosis.¹¹ Plaintiff was admitted to Edward Hospital on April 17, 2006 for a surgical procedure to correct her lumbar radiculopathy, a disease of the nerve root on the lumbar spine.¹² Plaintiff underwent a hemilaminotomy and micro-foraminotomy, an invasive spinal surgical procedure in which a part of the vertebra is removed from the patient's spine.¹³ She was discharged on April 20, 2006 and in the discharge summary, her treating surgeon Dr. John

---

³ (R141-42, 48-105)
⁴ (R7-17)
⁵ *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994)
⁶ (R296)
⁷ (R330)
⁸ (R319-320)
⁹ (R322-23)
¹⁰ (R302-04)
¹¹ (R296-97)
¹² (R281-91)
¹³ Laser Spine Institute, Hemilaminectomy, https://www.laserspineinstitute.com/back_problems/back_surgery/types/hemilaminectomy/ (last visited 4/7/2016)

2

Brayton noted that Plaintiff "did very well" with all "preoperative symptoms resolved."[14] It was noted that Plaintiff did not report leg pain post-surgery.[15] Plaintiff attended physical therapy sessions at Mendota Community Hospital ("Mendota") from May 2006 through June 2006.[16] On September 12, 2006, Plaintiff returned to Mendota for an MRI following her surgery.[17] The MRI resulted in "excellent appearing result at the surgical site" but also an unaddressed unchanged disc disease in the lower region of her back.[18] Another MRI was taken at Mendota on November 24, 2006 that showed mild disc bulging and asymmetric scar tissue.[19]

On October 2, 2006, Dr. Brayton noted the presence of an "inflammatory" change, but found that there was no recurrent or residual herniation after the procedure.[20] On December 12, 2006, Dr. Steven Lekah examined Plaintiff after being referred by Dr. John Brayton.[21] Plaintiff complained chiefly of migraines but after an assessment, Dr. Brayton concluded they were not frequent enough to require preventative treatment because "she is already on a lot of pain medications."[22]

Plaintiff began joint injections with Dr. Wilson in January 2008 due to continued lower back pain post-surgery.[23] Dr. Wilson noted Plaintiff's improvement in carrying out daily activities due to medication on August 14, 2008.[24] Dr. Wilson reported similar findings in his evaluations of Plaintiff through April 9, 2009.[25] Another MRI of the lumbar spine taken on

---

[14] (R318)
[15] (Id.)
[16] (R 413-416)
[17] (R300)
[18] (R300-01)
[19] (R340)
[20] (R292)
[21] (R294-95)
[22] (R294)
[23] (R325)
[24] (R463)
[25] (R465-78, 328-29)

November 24, 2008 at Mendota revealed moderate narrowing of disc space in Plaintiff's lower back.[26] Dr. Wilson decided to refer Plaintiff to Dr. Dalip Pelinkovic for further evaluation.[27]

On November 20, 2008, Plaintiff saw Dr. Pelinkovic for an evaluation of her lower back pain.[28] After an MRI was taken of her back on February 27, 2009, Dr. Pelinkovic reported that she might have recurrent disc herniation.[29] Dr. Pelinkovic suggested surgical intervention, specifically fusion, to relieve her of her pain.[30] During a follow-up visit on April 29, 2011, Dr. Pelinkovic once again suggested fusion.[31]

During this time, Plaintiff continued to visit Dr. Wilson. Medical records indicate that Plaintiff generally visits Dr. Wilson for prescription medication and management of her pain.[32] Plaintiff reported fluctuating pains throughout her visits to Dr. Wilson from January 2010 through March 2011.[33] On August 8, 2011, Dr. Wilson referred Plaintiff to Dr. Mir Ali.[34] After an evaluation, Dr. Ali noted that Plaintiff's pain is limited to her lower back and is worsened with prolonged sitting, flexing, and twisting.[35] Dr. Ali discussed both operative and non-operative procedures with Plaintiff but noted that she has become dependent on narcotic pain medication for relief.[36] He suggested that Plaintiff attend physical therapy and concluded she was not a surgical candidate because of her nicotine use.[37]

---

[26] (R335)
[27] (R465)
[28] (R375-76)
[29] (R374)
[30] (Id.)
[31] (R372)
[32] (R479-90)
[33] (R501-30)
[34] (R396-400)
[35] (R396)
[36] (R398)
[37] (R399)

On July 25, 2012, Plaintiff underwent a provocation discography procedure with Dr. Wilson to diagnose Plaintiff's pain and identify the correct surgical procedure.[38] On August 20, 2012, Plaintiff was referred to Dr. John Andreshak by Dr. Wilson to obtain a second medical opinion regarding Plaintiff's lower back pain.[39] Dr. Andreshak found that Plaintiff's lower back pain was due to lumbar sciatica and spondylolisthesis and suggested surgery to correct the issues.[40] On December 4, 2012, Plaintiff returned to Edward Hospital for the recommended surgical procedure to correct her lumbar spinal stenosis.[41] Two weeks after the surgery, Plaintiff returned to Dr. Andreshak, who reported that Plaintiff was progressing well and encouraged her to increase her walking.[42]

On March 15, 2013, Plaintiff returned to Dr. Andreshak for another post-surgery follow-up appointment and he suggested that Plaintiff begin physical therapy.[43] He reported that Plaintiff did not have any restrictions in her daily activities.[44] At this time, Plaintiff also continued to see Dr. Wilson for medication management through April 22, 2013.[45] Plaintiff saw Dr. Wilson monthly from June through November 2013 for medication and continued pain management.[46] He continuously reported that Plaintiff's "daily activities are improved by using the medications."[47] On June 14, 2013, Dr. Andreshak reported that Plaintiff was progressing well six months after her surgery but that he felt her numbness might not improve based on its long-standing compression.[48] He also reported that Plaintiff continued to have no limitations in her

---

[38] (R233-34)
[39] (R656-58)
[40] (R657)
[41] (R684-89)
[42] (r652-53)
[43] (R648-49)
[44] (R648)
[45] (R533-602)
[46] (R34-47)
[47] (R35, 37, 39, 41, 45, 47)
[48] (R720)

5

daily activities.[49] During a visit on July 17, 2013, Plaintiff reported that she continued to have pain and paresthesia[50] in her back, though it did not limit her ability to carry out her activities.[51]

On June 20, 2013, Dr. Wilson wrote a letter to Plaintiff's attorney to "clarify" that he believed Plaintiff "has been disabled due to degenerative disc disease and lumbar radiculitis prior to June 30, 2010."[52] He further opined that Plaintiff needed to lie down to relieve pain and "cannot do productive work during these times."[53] He further stated that "she was clearly disabled prior to June 2010" and "she already had [two] surgeries prior to June 2010 and a continued decline in function after that time, necessitated a third surgery."[54] Dr. Wilson concluded in his letter that after a thorough review of his records, Plaintiff "has been disabled since 2007" and her "condition has only worsened since that time."[55]

### III. Plaintiff's Testimony

Plaintiff and her attorney testified at the hearing via teleconferencing on June 13, 2013.[56] Plaintiff testified that in 2006, she had a discectomy, a procedure designed to relieve pressure from the herniated discs.[57] She further stated that the procedure worsened her condition. During this period, Plaintiff testified she felt pain ranging a seven or eight on a 10-point scale.[58] The pain was persistent and required Plaintiff to switch her positions to accommodate it.[59] Plaintiff further testified that she was unable to take baths or showers because she was unable to stand and

---

[49] (Id.)
[50] *Paresthesia*, an abnormal touch sensation, such as burning, prickling, or formication, often in the absence of an external stimulus, Dorland's Medical Dictionary, (32nd ed. 2012).
[51] (R723-24)
[52] (R718)
[53] (Id.)
[54] *See supra* note 84
[55] (Id.)
[56] (R50)
[57] (Id.)
[58] (R82)
[59] (Id.)

6

keep her hands back.[60] Plaintiff was also unable to cook for her family or perform household chores.[61] Plaintiff further testified that she had trouble ascending the stairs of her home.[62] Whereas she was very active prior to her injury, Plaintiff can no longer engage in recreational activities or socialize with family or friends.[63]

Plaintiff next testified that her pain and other symptoms worsened in 2010 and she began to feel a "grinding" sensation in her back.[64] At this time, her foot and leg pains were also worsening, so she elected to undergo a surgical procedure to correct it.[65] Plaintiff had fusion surgery for her back in December 2012.[66] Plaintiff stated that since the surgery, she has been able to sit up and stand up a little bit straighter but she does not feel any relief.[67] She further stated that since the surgery, she has had tremendous pain in her right leg that radiated to her right foot.[68] Furthermore, after the procedure, the doctors informed Plaintiff that she has exhausted every kind of repair and that nothing more could be done to alleviate her pain.[69]

## IV. ALJ Decision

On November 1, 2013, the ALJ issued a written determination denying Plaintiff's DIB application.[70] As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2010.[71] At step one, the ALJ determined that Plaintiff did not engage in Substantial Gainful Activity ("SGA") since her alleged onset date of

---

[60] (R85)
[61] (R86)
[62] (R87)
[63] (R88-89)
[64] (R90)
[65] (R91)
[66] (R66)
[67] (Id.)
[68] *See supra* note 125
[69] (Id.)
[70] (R7-17)
[71] (R12)

7

November 2, 2005.[72] At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, arthritis, and stenosis.[73] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1.[74] At step four, the ALJ then assessed Plaintiff's Residual Functional Capacity ("RFC") and determined that Plaintiff could perform light work except that she is required a sit and stand option at will.[75] The ALJ limited her ability to climb ladders, ropes, or scaffolds, but found that she could frequently climb ramps and stairs, balance, crouch, and kneel, occasionally stoop and crawl, but Plaintiff must avoid concentrated exposure to extreme cold, excessive vibrations, moving machinery, and unprotected heights.[76] At the final step, the ALJ found that Plaintiff is capable of performing past relevant work as an office manager and customer service representative as generally performed.[77]

## STANDARD OF REVIEW

Judicial review of the ALJ's decision is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision.[78] Substantial evidence is evidence "a reasonable mind might accept as adequate to support a conclusion."[79] A "mere scintilla" of evidence is not enough.[80] Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the

---

[72] (Id.)
[73] *See supra* note 145
[74] (R13)
[75] (Id.)
[76] *See supra* note 148
[77] (R16)
[78] *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009)
[79] *Richardson v. Perales*, 402 U.S. 389, 401 (1971)
[80] *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002)

evidence to the conclusion."[81] If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand.[82] An ALJ "must minimally articulate his reasons for crediting or discrediting evidence of disability."[83] The court conducts a "critical review of the evidence" and will not uphold the ALJ's decision when "it lacks evidentiary support or an adequate discussion of the issues."[84] However the court may not "displace the ALJ's judgment by reconsidering facts or evidence or make independent determinations."[85]

## ANALYSIS

### I. The ALJ Only Considered Evidence that Supported his Opinion, and Ignored the Medical Evidence Supporting Plaintiff's Disability Claim.

Several of Plaintiff's arguments can be condensed into a single contention; the ALJ focused only on evidence that supported his disability denial and ignored other relevant evidence that proved that she was disabled. This Court agrees with that contention.

First, the ALJ determined that Plaintiff's symptoms and complaints are not fully supported by objective findings.[86] One specific reason that the ALJ gave was that although Plaintiff alleged a history of constant back pain, her treatment for the pain was "conservative."[87] In determining that Plaintiff's visits to Dr. Wilson was "conservative and consist[ing] of primarily medication management," it appears that the ALJ engaged in the type of impermissible cherry-picking criticized by the Seventh Circuit.[88] Both the medical records and Dr. Wilson's treatment notes indicate that Plaintiff has undergone numerous nonsurgical measures to manage her pain, such as injection therapy, physical therapy, and a percutaneous disc compression in

---

[81] *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008)
[82] *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)
[83] *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir. 2000)
[84] *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003); *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)
[85] *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)
[86] (R14)
[87] *See supra* note 164
[88] (R15); *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)

9

November 2005.[89] In April 2006, Plaintiff visited Dr. Brayton, who performed a hemilaminotomy.[90] The ALJ also failed to mention Plaintiff's pain medications, which included Methadone, Vicodin, and morphine throughout the course of her treatment with Dr. Wilson, in his written decision.[91] Although a written evaluation of each piece of evidence or testimony is not required, the ALJ seems to have selected and discussed only that evidence that favored his conclusion.[92] In simply concluding that Plaintiff's symptoms did not rise to the level of her allegations because of their "conservative" nature, the ALJ ignored an entire line of evidence that demonstrated the extent in which Plaintiff sought treatment to relieve her pain.[93]

Moreover, the ALJ failed to give full consideration to Plaintiff's medical record throughout his opinion. The ALJ noted that while Dr. Wilson's treatment notes dated from August 2008 through June 2010 document Plaintiff's consistent reports of pain and numbness in the right leg with pain ranging from five to eight on a 10-point scale, Dr. Wilson also documented that Plaintiff's symptoms were improved with medication and that she was able to perform daily activities while using medication.[94] Additionally, though Plaintiff's relationship with Dr. Wilson continued through to 2013, the ALJ once again remarked on the "conservative" nature of the treatment. There are a few issues with the ALJ's analysis of Dr. Wilson's medical opinion. First, it appears that the ALJ believed that Plaintiff was functional simply because her daily activities and conditions improved with her medication. But Dr. Wilson's reports throughout the course of his treatment of Plaintiff also suggest that Plaintiff's condition was, in fact, worsening. During a visit on January 5, 2010, Plaintiff reported that her pain was

---

[89] (R296, 319, 321)
[90] (R281-84); Laser Spine Institute, Hemilaminectomy, https://www.laserspineinstitute.com/back_problems/back_surgery/types/hemilaminectomy/ (last visited 4/7/2016)
[91] (R294, 511)
[92] *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985)
[93] *See Villano*, 556 F.3d 558 at 562-63; *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)
[94] (R14)

"interfering with [her] sleep pattern and daily activities and worsening."[95] This was while Plaintiff continued to take Methadone for her pain.[96] The record is rife with other examples of Plaintiff reporting to Dr. Wilison that her condition was worsening or, at the very least, not improving.[97] Though there appeared to have been ample evidence supporting Plaintiff's allegations of pain, the ALJ include such evidence in rendering his disability determination. Once again, the ALJ relied on the evidence that supported his opinion and ignored a line of evidence that suggested disability.[98] Meaningful review requires the ALJ to articulate reasons for accepting or rejecting entire lines of evidence.[99] The ALJ's decision must be based upon consideration of all the relevant evidence, and that the ALJ "must articulate at some minimal level his analysis of the evidence."[100] Because the ALJ failed to consider all the relevant medical records, the court cannot conclude that his decision was based on substantial evidence.

## II.   The ALJ Incorrectly Ignored Plaintiff's Pre-DLI Medical Evidence.

Although the Commissioner correctly argues that Plaintiff must prove that she was disabled on or before June 30, 2010, "it is still necessary to ascertain whether the disability arose prior to an even earlier date—normally, when the claimant was last insured."[101] Here, the ALJ failed to give consideration to Plaintiff's medical records that preceded her DLI of June 30, 2010. This was particularly egregious, considering Dr. Wilson has been treating Plaintiff since January 2008 and therefore there are medical records that the ALJ could have reviewed to render a disability decision. The Commissioner argues that the ALJ did in fact consider and discuss the

---

[95] (R499)
[96] (Id.)
[97] (R325, 375, 465, 501, 511)
[98] *Herron*, 19 F.3d 329 at 333; *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010)
[99] *Herron*, 19 F.3d 329 at 333-34 *citing Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993); *Look v. Heckler*, 775 F.2d 192, 195 (7th Cir. 1985)(failure to discuss un-contradicted evidence consisting of claimant's testimony as well as medical reports); *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984) (failure to discuss subjective complaints of pain supported by medical statements)
[100] *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988); *Orlando*, 776 F.2d 209 at 213
[101] *Eichstadt*, 534 F.3d 663 at 666

record evidence of Plaintiff's condition prior to her DLI.[102] However, this is not the case. After a review of the ALJ decision, it appears that the ALJ simply recited the Dr. Wilson's treatment notes prior to June 30, 2010 without providing any detailed evaluation.[103] Without further discussion of the medical evidence prior to Plaintiff's DLI, the court cannot determine whether the ALJ fulfilled his duty of determining whether Plaintiff was disabled during the relevant period.

## III. The ALJ Did Not Follow the "Treating Physician" Rule.

Moreover, in simply rejecting Dr. Wilson's reports, the ALJ seems to have ignored the "treating physician" rule,[104] which "directs the [ALJ] to give controlling weight to the medical opinion of a treating physician if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence.' "[105] However, once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight and at that point "the treating physician's evidence is just one more piece of evidence for the ALJ to weigh.[106] The rule goes on to list various factors that the ALJ must consider when assigning weight, such as how often the treating physician has examined the claimant, whether the physician is a specialist in the condition claimed to be disabling, and so forth.[107] Treatment notes show that Dr. Wilson's treatment relationship with Plaintiff predates Plaintiff's DLI of June 30, 2013, as her first documented visit

---

[102] (Id.)
[103] (R14)
[104] 20 C.F.R. § 404.1527(d)(2)
[105] *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) *citing Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006)
[106] *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011)(citing § 404.1527 for principle that ALJ must offer "good reasons" for rejecting treating physicians opinion, which is accorded controlling weight so long as it is "well supported" and consistent with other evidence in the record) (internal quotations and citation omitted); *see also Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)
[107] *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) citing 20 C.F.R. § 404.1527(c)(2)(describing six factor weighing process ALJ must perform for "every" treating physician)

with him was in January 2008.[108] Yet the ALJ did not engage in any discussion regarding his treatment notes from 2008 and simply rejected Dr. Wilson's medical opinion in two reports from June 2013. As stated previously, this was erroneous, as the ALJ should have done more than to consider evidence after Plaintiff's DLI. But even if the ALJ rejected Dr. Wilson's medical opinion, the inquiry should not end at that point. Under the "treating physician rule," the ALJ must consider the evidence, along with the regulatory factors, and designate the appropriate weight to accord the medical opinion.[109] Unfortunately, the ALJ failed to follow the rule here.

## IV. Remand Instructions Pursuant to SSR 16-3p.

Because the case is remanded for further proceedings, the court encourages the ALJ to reconsider his credibility determination in light of the fact that the SSA has recently updated its guidance about evaluating symptoms in disability claims.[110] The new SSR 16-3p replaces SSR 96-7p and eliminates the term "credibility" from the SSA's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character."[111] As with a credibility analysis, in evaluating a claimant's symptoms, an ALJ should continue to consider familiar elements, such as objective medical evidence of the claimant's impairments, the daily activities, allegations of pain and other aggravating factors, "functional limitations," and treatment (including medication).[112] On remand, the ALJ should re-evaluate Claimant's subjective symptoms in light of SSR 16-3p. In particular, the ALJ should give careful consideration to Plaintiff's treatment, her functional limitations, and her allegations of symptom severity, as the ALJ discredited such allegations in his current decision.

---

[108] (R325)
[109] *See supra* note 195
[110] See SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016)
[111] Id. at *1.
[112] *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006)

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment is denied. This matter is remanded for further proceedings consistent with the opinion.

**ENTERED:**

**DATED:** 4/26/2016

Susan E. Cox
United States Magistrate Judge